IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

| | |
|---|---|
| PAMELA ANN VERNES, ) | Cause No. CV 07-150-BLG-RFC-CSO |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | FINDINGS AND RECOMMENDATION |
| ) | OF U.S. MAGISTRATE JUDGE |
| WARDEN JO ACTON; ATTORNEY ) | |
| GENERAL OF THE STATE OF ) | |
| MONTANA, ) | |
| ) | |
| Respondents. ) | |

_____

On November 7, 2007, Petitioner Pamela Ann Vernes filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. Vernes is a state prisoner proceeding pro se.

On July 18, 2008, Vernes was ordered to show cause why her petition should not be dismissed as procedurally defaulted. She responded on August 11, 2008.

## I.  Factual and Procedural Background

The facts underlying Vernes's convictions were briefly set forth by the

Montana Supreme Court in its opinion on direct appeal:

> Vernes and her husband Richard went on the warpath in the early morning hours of July 5, 2002.  They ingested a concoction of alcohol and prescription pills, including Xanax, then dressed half naked and painted their faces and bodies in an ill-fated attempt to resemble Native Americans.  Vernes and Richard also built a makeshift teepee out of firewood in their driveway.  A neighbor correctly determined the time had come to call the police when Vernes and Richard doused the teepee in gasoline.
>
> Vernes's and Richard's bizarre conduct may have been viewed as humorous, but for their nefarious intentions.  They proceeded to storm the apartment of their landlord, Luella Loga (Luella), armed with large knives and a walking stick.  Vernes attacked Luella's 82-year-old mother, Ella Loga (Ella), with a knife and walking stick, while Richard tried to scalp Luella.  Fortunately, the police arrived in the midst of the melee and apprehended Vernes and Richard.

State v. Vernes, 130 P.3d 169, 171-72 ¶¶ 6-7 (Mont. 2006).

Vernes was represented by Melissa Edwards.  On December 19, 2003, Vernes was convicted by a jury in Montana's Thirteenth Judicial District Court, Yellowstone County, of attempted deliberate homicide and attempted deliberate homicide by accountability.  She was sentenced to serve eighty years in prison on the first count and seventy on the second, with the terms to run concurrently.  See Pet. (doc. 1) at 2-3, ¶¶ 1-6.

Vernes appealed, represented by new counsel Chad Wright.  She argued that the trial court erred by excluding expert testimony that there was a "definite

possibility" that she experienced a paradoxical reaction to Xanax, though her expert was permitted to testify that such a reaction is a known side effect of Xanax. She also argued that the jury should have been given a specific unanimity instruction to identify the act that constituted a material step in the attempt and that the restitution portion of her sentence was illegal. On February 16, 2006, the Montana Supreme Court affirmed her conviction. See Vernes, 130 P.3d at 169. In April 2007, the Sentence Review Division affirmed her sentence. See Pet. at 3, ¶ 9.

Although Vernes says she did not file a petition for postconviction relief, see Pet. at 3, ¶ 11, she also says that "Judge Todd denied my post conviction relief," see Pet. Attachment at 5, ¶ H, and that Robert Kelleher represented her in a post-conviction proceeding, see Pet. at 7, ¶ 17(e). The records of the Thirteenth Judicial District Court show that she filed a postconviction petition on August 15, 2007. It was denied on September 21, 2007. She did not appeal. See Vernes v. State, No. DV 07-1003 (Mont. 13th Jud. Dist. Court Aug. 15, 2007).

Vernes signed her federal habeas petition and deposited it in the prison mail system on November 5, 2007. See Pet. at 8, Pet'r Decl. ¶ C; Houston v. Lack, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

## II. Vernes's Allegations

Vernes first contends that her attorney was ineffective because she failed to cross-examine numerous witnesses and the alleged victims, did not present evidence of mitigation, knew that Judge Todd "did not like her," and had little or no experience with a "capital offense case." See Pet. at 4, ¶ 15A; Pet. Attachment at 1, ¶ A.

Second, Vernes claims that venue should have been changed due to unfavorable pretrial publicity. She notes that her husband was tried separately in another venue and was acquitted on one charge based on the same evidence presented at her trial. See Pet. at 4-5, ¶ 15B; Pet. Attachment at 2-3, ¶ B.

Third, Vernes asserts that the prosecution and/or the police tampered with evidence by withholding reports or rendering unuseable various answering machine tapes that would have supported her defense. She also says that no finger prints were found on the knife she allegedly carried, which could not be matched to the victim's wounds. See Pet. at 5, ¶ 15C; Pet. Attachment at 2-3, ¶ C; id. at 4-5, ¶ F.

Fourth, Vernes contends that a search warrant listed her address incorrectly and so was invalid. See Pet. at 6, ¶ 15D; Pet. Attachment at 3, ¶ D.

Fifth, Vernes claims that she was maliciously prosecuted because the police responded inappropriately to her numerous calls for assistance in the days before the crime. She adds that, after her arrest, she was photographed nude and semi-conscious

at the Detention Center, whereas she was clothed at the scene.  See Pet. Attachment at 3-4, ¶ E.

Finally, Vernes asserts that Judge Todd was biased against her and incorrectly denied her petition for postconviction relief.  See id. at 5, ¶¶ G-H.

## III. Analysis

### A. Application of Doctrine of Procedural Default/Procedural Bar

The following analysis was presented in the Court's Order to Show Cause of July 18, 2008.  Vernes had an opportunity to show that the doctrine does not apply as the Court describes below.  She has not done so.

The doctrine of procedural default bars this Court from considering the petition.  The issue of procedural default may be raised in a court's preliminary screening "when the default is obvious from the face of the petition and when recognizing the default would 'further the interests of comity, federalism, and judicial efficiency.'"  Vang v. State of Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003) (quoting Boyd v. Thompson, 147 F.3d 1124, 1128 (9th Cir. 1998)).

Here, procedural default is clear on the face of the petition.  Vernes did not raise any of the claims alleged in her federal petition in her direct appeal to the Montana Supreme Court.  Compare Vernes, 130 P.3d at 171 ¶¶ 3-5 (listing issues

presented), with Pet. at 4-7 and Pet. Attachment at 1-5.  She filed a petition for postconviction relief, but she did not appeal the adverse decision.  See Pet. at 3, ¶ 12; Vernes, No. DV 07-1003 (Mont. 13th Jud. Dist. Ct. Sept. 21, 2007).  Consequently, her claims have not been fairly presented to the Montana Supreme Court.  A second petition for post-conviction relief is not available because the one-year state statute of limitations has already expired.  See Mont. Code Ann. § 46-21-102(1) (2003); State v. Root, 64 P.3d 1035, 1037-38 ¶ 16 (Mont. 2003).  Vernes's claims are procedurally barred in state court.

### B. Excuse for Procedural Default

Under most circumstances, claims that are procedurally defaulted in state court also cannot be raised in federal court.  The state's procedural bars are generally adequate and independent grounds for declining to grant relief and are not subject to federal review.  Harris v. Reed, 489 U.S. 255, 263 (1989).  In such cases, a petitioner is said to have procedurally defaulted on her claims for relief, and her case cannot be considered by a federal court.

There are two exceptions to the general rule of dismissal for procedural default.  Once a procedural default is found to exist, "federal habeas review of the claims is barred *unless* the prisoner can demonstrate cause for the default and actual prejudice

as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991) (emphasis added).  Accordingly, Vernes was previously advised that, before this Court could review her claims, she must EITHER show (1) cause, and (2) prejudice; OR she must show that this Court's failure to consider her claims would result in a fundamental miscarriage of justice.  Those requirements were briefly described for Vernes.  See Order to Show Cause at 7-8.

Vernes's response to the Order continues to challenge the fairness of the trial proceedings.  The nature of her claims is clear.  What she must show, however, is a good reason why she did not present the claims she now makes to the Montana Supreme Court before she filed her federal petition.  The exhibits she attaches to her response do not address the time period of her default in the fall of 2007.  Vernes was represented by counsel in her postconviction proceedings.  She has failed to show cause to excuse her procedural default in state court.

Additionally, Vernes asserts that failure to consider her claims will result in a fundamental miscarriage of justice because the trial she had was not fair.  But the miscarriage of justice exception applies to persons who make a convincing showing that they did not commit the crimes of which they were convicted.  See Schlup v.

Delo, 513 U.S. 298, 327 (1995) (petitioner must show that "it is more likely than not that no reasonable juror would have found [her] guilty beyond a reasonable doubt" if the errors of which she complains had not been committed). Vernes does not say she is innocent. She says she committed the crimes because she was in a precarious mental state at the time. See, e.g., Pet'r Resp. at 1-2 ("State of Mind is an important element in any good defense where the defendant is not claiming total innocence. . . . Vernes has admitted to at [sic] every opportunity and will continue to feel remorse for her actions until the day she dies"). By definition, genuine remorse and sentencing disparity cannot amount to a "fundamental miscarriage of justice" within the meaning of Schlup.

Vernes fails to show why the doctrine of procedural default does not apply as set forth above. She also fails to show cause and prejudice or a fundamental miscarriage of justice to excuse her procedural default. Accordingly, her petition should be dismissed with prejudice as procedurally barred. See Harris, 489 U.S. at 263.

## IV. Certificate of Appealability

### A. Governing Law

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may

issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).   The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Any doubt as to whether a petitioner has met the standard is resolved in his favor.  Lambright, 220 F.3d at 1025.  The Court must "state why a certificate should not issue." Fed. R. App. P. 22(b)(1) (emphasis added).

Where, as here, the district court dismisses a claim on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether

"jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Lambright, 220 F.3d at 1026 (quoting Slack, 529 U.S. at 484).

### B. Discussion

The Court does not have enough information to determine whether Vernes makes a substantial showing of the denial of a constitutional right. However, it is clear beyond doubt that Vernes had an opportunity to show that the Court's analysis of her procedural default in state court was wrong. She has not identified any error. She also had an opportunity to show that her procedural default should be excused. Her assertions that her trial was unfair and her sentence is excessive do not constitute cause to excuse her failure to present her claims to the Montana Supreme Court. Additionally, she does not claim that she is actually innocent. The fundamental miscarriage of justice exception to procedural bar cannot apply to her. Reasonable jurists would find no basis to disagree with the procedural ruling. A COA is not warranted.

Based on the foregoing, the Court enters the following:

### **RECOMMENDATION**

1. Vernes's Petition (doc. 1) should be DISMISSED WITH PREJUDICE as procedurally barred.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Vernes.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Vernes must immediately notify the Court of any change in her mailing address by filing a "Notice of Change of Address."</u>  Failure to do so may result in dismissal of her case without notice to her.

DATED this 13th day of August, 2008.

                                                /s/ Carolyn S. Ostby
                                                Carolyn S. Ostby
                                                United States Magistrate Judge